Richard R. Best
Lara Shalov Mehraban
Alexander Vasilescu
Sandeep Satwalekar
Rhonda L. Jung
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
200 Vesey Street, Suite 400
New York, NY 10281-1022
Phone: (212) 336-0178 (Vasilescu)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> -against- <br><br> UBONG UBOH (A/K/A NEDI SHUPO, FRANK GOLDMAN, AND JONATHAN GOLDMAN) and TYLER CROCKETT (A/K/A DAN GIBSON AND DAVE CARROLL), <br><br> Defendants. | **COMPLAINT** <br><br> 19-CV-    (___) <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Securities and Exchange Commission, alleges the following against Defendants Ubong Uboh (a/k/a Nedi Shupo, Frank Goldman, and Jonathan Goldman) ("Uboh") and Tyler Crockett (a/k/a Dan Gibson and Dave Carroll) ("Crockett," and collectively, the "Defendants"):

## SUMMARY

1. From approximately 2016 through 2018 ("the Relevant Period"), using fictitious names and backgrounds, the Defendants solicited investors to purchase shares of several microcap issuers (the "Issuers") from a call room in Miami, Florida (the "Call Room").

2. Uboh and Crockett made material misrepresentations to investors about, among

other things, the Issuers' relationships with well-known financial institutions and their future prospects. In reality, the Issuers did not have any relationships with these institutions, and the Defendants had no basis to make predictions about the prospects of the Issuers. Many of the Issuers had undergone significant changes to their business plans and often had limited or no revenues or profits.

3. After being solicited by the Defendants, retail investors, many of whom were senior citizens, purchased the Issuers' stock. The investors have realized and unrealized losses totaling at least $1.1 million.

4. In addition to soliciting investors to purchase stock of the Issuers, in early 2018, Uboh and Crockett urged one of the Call Room investors ("Investor 1") to purchase shares of a purported technology company ("Company A") in a private offering. Uboh and Crockett told Investor 1 that Company A was in partnership with a well-known technology company ("Company B") and would experience significant growth as a result of this relationship. Based on the Defendants' false representations, Investor 1 invested $500,000 in Company A's private placement. Defendants misappropriated Investor 1's funds, instead of investing them in Company A.

## **VIOLATIONS**

5. As a result of the conduct alleged herein, Defendants have engaged in, and unless restrained and enjoined, will continue to engage, directly or indirectly, in transactions, acts, practices and courses of business that constitute violations of Sections 17(a)(1), (2) and (3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77q(a)(1), (2) and (3)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and Rules 10b-5(a), (b) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a), (b) and (c)].

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

6. The Commission brings this action pursuant to authority conferred by Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and Section 21(d)(1) of the Exchange Act [15 U.S.C. § 78u(d)(1)].

7. The Commission seeks a final judgment: (a) permanently enjoining the Defendants from future violations of the securities laws provisions that the Defendants violated as alleged in this Complaint; (b) ordering the Defendants to disgorge all ill-gotten gains and to pay prejudgment interest on those amounts, pursuant to Exchange Act Section 21(d)(5) [15 U.S.C. § 78u(d)(5)]; (c) imposing civil money penalties on the Defendants pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; (d) permanently prohibiting the Defendants from participating in any offering of penny stock, pursuant to Securities Act Section 20(g) [15 U.S.C. § 77t(g)] and Exchange Act Section 21(d)(6) [15 U.S.C. § 78u(d)(6)]; and (e) such other relief as the Court deems just and appropriate.

## JURISDICTION AND VENUE

8. The Court has subject matter jurisdiction over this action pursuant to Sections 20(b) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b) and 77v(a)] and Sections 21(d) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) and 78aa].

9. Venue is proper in the Eastern District of New York pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Certain of the acts, practices, transactions and courses of business alleged in this Complaint occurred within the Eastern District of New York. For example, during the Relevant Period, Defendants solicited funds from investors and prospective investors that reside in the Eastern

District of New York.

10. The Defendants, directly and indirectly, made use of the means or instrumentalities of interstate commerce, or of the mails and wires, in connection with the transactions, acts, practices, and courses of business alleged in this Complaint.

**DEFENDANTS**

11. **Uboh**, age 41, resides in Miami, Florida. When communicating with investors, Uboh used several fictitious names, including Nedi Shupo, Frank Goldman, and Jonathan Goldman. On March 13, 2013, in *United States v. Ubong Uboh and Rachel Meyers*, 13 Cr. 20172 (WJZ), the United States Attorney's Office for the Southern District of Florida charged Uboh with wire fraud and conspiracy to commit wire fraud in connection with a timeshare scheme. Uboh pleaded guilty to these charges, and on September 6, 2013, he was sentenced to 36 months imprisonment, 3 years of supervised release (during which time he engaged in all of the conduct described herein), and ordered to pay restitution of $293,101. On January 14, 2019, the court revoked Uboh's supervised release and sentenced him to 7 months in prison. Uboh was released on June 12, 2019.

12. **Crockett**, age 31, resides in Fairfax, Virginia. During the Relevant Period, Crockett lived in Miami, Florida. When communicating with investors, Crockett used several fictitious names, including Dan Gibson and Dave Carroll.

**OTHER INDIVIDUALS AND ENTITIES**

13. **Garrett O'Rourke ("O'Rourke")**, age 31, resided in and managed the Call Room in Miami, Florida until early 2019. On July 18, 2019, the Commission brought an emergency injunctive action against O'Rourke. *SEC v. Garrett O'Rourke, et al.*, 19-cv-4137 (E.D.N.Y. filed July 18, 2019). The complaint alleges that O'Rourke was part of a control group

4

that owned the vast majority of the Issuers' free-trading shares and that, after Uboh and Crockett and others persuaded investors to purchase shares of the Issuers, dumped millions of dollars' worth of these shares. The same day that the Commission filed its emergency action against O'Rourke, a criminal complaint against O'Rourke, which alleges facts arising out of the same conduct alleged in *SEC v. O'Rourke*, was unsealed in *United States v. O'Rourke, et al.*, 19-mj-00644 (E.D.N.Y. filed July 18, 2019) (the "Criminal Action"). The Commission's injunctive action against O'Rourke is stayed pending resolution of the Criminal Action.

14. **Cyberfort Software, Inc. ("Cyberfort")** is a Nevada corporation, headquartered in San Francisco, California, that purports to be in the business of cybersecurity technology. Before entering the cybersecurity business, the company specialized in the sale of all natural pet products under the name Gaia Remedies, Inc., and had been in the business of acquiring and establishing berry farms under the name Patriot Berry Farms, Inc. During the Relevant Period, Cyberfort's common stock was registered with the Commission pursuant to Exchange Act Section 12(g) [15 U.S.C. § 78l(g)] and quoted on OTC Markets under the ticker symbol CYBF. According to its Forms 10-K filed with the Commission for fiscal years ended March 2016, 2017, and 2018, the company has not generated any revenue. Throughout the Relevant Period, Cyberfort's common stock met the definition of a "penny stock" under Exchange Act Section 3(a)(51) [15 U.S.C. § 78c(a)(51)] and Rule 3a51-1 thereunder [17 C.F.R. § 240. 3a51-1].

15. **EnviroTechnologies International, Inc. ("EnviroTech")** is a Delaware corporation, headquartered in Pleasant Grove, Utah, that purports to be in the cannabidiol oil (CBD) market selling hemp-based products. Before entering this business, the company's business lines included "healthcare software and internet information" according to its 2017 annual report. During the Relevant Period, EnviroTech's common stock was quoted on OTC

Link under the symbol ETII. Throughout the Relevant Period, EnviroTech's common stock met the definition of a "penny stock" under Exchange Act Section 3(a)(51) [15 U.S.C. § 78c(a)(51)] and Rule 3a51-1 thereunder [17 C.F.R. § 240. 3a51-1].

16. **Evolution Technology Resources, Inc. ("Evolution Tech")** is a Delaware corporation, headquartered in Canada, which purports to be in the business of acquiring high growth companies in the online gambling and gaming sector including mobile apps. Before entering the gambling and gaming business, Evolution Tech purportedly "focused on acquiring intellectual property and assets for the manufacturing of biomass processing equipment for the production of energy." During the Relevant Period, Evolution Tech's common stock was quoted on OTC Markets under the symbol ETKR. According to its most recent periodic reports posted on OTC Markets' website, Evolution Tech has had no revenue or profits from at least January 1, 2017 through December 31, 2018. Throughout the Relevant Period, Evolution Tech's common stock met the definition of a "penny stock" under Exchange Act Section 3(a)(51) [15 U.S.C. § 78c(a)(51)] and Rule 3a51-1 thereunder [17 C.F.R. § 240. 3a51-1].

17. **Link Reservation Inc. ("Link Reservation")** is a Nevada corporation, headquartered in the United Kingdom that purports to be in the business of providing and developing CBD and hemp-based products for animals--primarily dogs, cats, and horses. Before entering the CBD and hemp-based products market, the company purported to be in the business of providing credit card reservation transactions for the travel industry. During the Relevant Period, Link Reservations' common stock was quoted on the OTC Pink market under the symbol LSRV. According to its most recent periodic reports posted on OTC Markets' website, the company had no revenue or profits from at least January 1, 2017 through March 31, 2019. Throughout the Relevant Period, Link Reservation's common stock met the definition of a

"penny stock" under Exchange Act Section 3(a)(51) [15 U.S.C. § 78c(a)(51)] and Rule 3a51-1 thereunder [17 C.F.R. § 240. 3a51-1].

## FACTS

### Overview of the Call Room Scheme

18. During the Relevant Period, Uboh and Crockett worked in the Call Room soliciting retail investors to purchase shares of the Issuers.

19. O'Rourke directed Uboh and Crockett as to which of the Issuers to recommend at a particular point in time.

20. Uboh and Crockett then called investors touting the prospects of the Issuers and urging the investors to purchase their stock.

21. On numerous occasions when speaking to investors, Uboh and Crockett knowingly or recklessly: (1) used fake names: (2) lied about their backgrounds; and (3) used prepaid cell phones, which they often changed to further conceal their identities.

22. In return for their role in securing money from investors, Uboh and Crockett received $341,898 and $203,481, respectively, from bank accounts that O'Rourke controlled.

23. Investors who purchased the Issuers' stock after being solicited by Uboh and Crockett have incurred over $1.1 million in realized and unrealized losses.

### Uboh and Crockett Solicit Money From Senior Retail Investors

24. Uboh and Crockett often solicited investor money from senior citizens using the fraudulent tactics described above.

*Investor 1*

    a. In or about November 2016, Uboh called a senior retail investor ("Investor 1") using the fictitious name Jonathan Goldman.

b. Uboh told Investor 1 that he worked for NASDAQ Private Market, and that Investor 1 would make a significant return if he invested in Link Reservation and 10 times his money if he invested in Cyberfort. To add credibility to his fictitious background, Uboh guided Investor 1 to NASDAQ Private Market's webpage, which is part of NASDAQ's website. In fact, Uboh did not work for NASDAQ Private Market, and Uboh had no basis for telling Investor 1 that he would make significant returns if he invested in Link Reservation and Cyberfort, neither of which have generated any revenue in recent years.

c. After his conversation with Uboh, Investor 1 purchased $55,000 worth of Link Reservation and Cyberfort stock, and has incurred realized and unrealized losses of almost all of this investment.

*Investor 2*

a. In or about February 2017, Uboh called another senior retail investor ("Investor 2") using the fictitious name Frank Goldman.

b. Uboh told Investor 2 that EnviroTech would have a 2-for-1 stock split and that the stock would hold at the same price as before the split, which meant that Investor 2 would double his money if he invested in the company. In fact, Uboh had no basis for telling Investor 2 that EnviroTech's stock would split or that stock would double in value.

c. After his conversation with Uboh, Investor 2 purchased approximately $300,000 worth of EnviroTech stock, and has incurred realized and unrealized losses of most, if not all, of this investment.

*Investor 3*

a. In or about October 2017, Crockett called a senior retail investor ("Investor 3") using the fictitious name Dan Gibson.

b. Crockett told Investor 3 that he was affiliated with one of the Issuers, Evolution Tech, and claimed that Evolution Tech had recently entered into a contract with a well-known company that would generate substantial revenue.

c. Crockett promised that Investor 3 would make significant returns if he invested in Evolution Tech common stock and guided Investor 3 to Evolution Tech's website to add to its credibility. In fact, Crockett was not affiliated with Evolution Tech. Further, Evolution Tech had not entered into a contract with the well-known company and had minimal, if any revenue.

d. After his conversation with Crockett, Investor 3 purchased approximately $371,000 worth of Evolution Technology stock, and has incurred realized and unrealized losses of most, if not all, of this investment.

*Investor 4*

a. In or about July 2018, Crockett called another senior retail investor ("Investor 4") using the fictitious name Dave Carroll.

b. During the call, which Investor 4 recorded, Crockett falsely stated that he was a director of Cyberfort. He also falsely claimed that Cyberfort: (a) had completed an initial public offering at $1.50 per share, (b) had secured preapproval to get listed on NASDAQ, (c) would be "hitting NASDAQ at $5.00 a share," (d) had partnered with a well-known company to handle all of that company's cybersecurity work, and (e) had obtained a commitment from a well-known

investment bank to purchase 2 million shares of Cyberfort's common stock at $4 per share.

c. After his conversation with Crockett, Investor 4 purchased approximately $210 worth of Cyberfort stock, and has incurred unrealized losses of most, if not all, of this investment.

**The Private Placement Scheme**

25. In or about January 2018, Crockett, using the fictitious name Dan Gibson, and Uboh, using the fictitious name Nedi Shupo, offered Investor 3 the opportunity to purchase up to 250,000 shares of Company A at $2 per share. Crockett and Uboh told Investor 3 that Company A had entered into a partnership with Company B, a well-known technology company, and that Company A would realize significant growth as a result of that partnership.

26. Crockett and Uboh knew, or recklessly disregarded the fact, that Company A had not entered into a partnership with Company B.

27. Based on Crockett and Uboh's misrepresentations concerning Company A's partnership with Company B, Investor 3 purchased 250,000 shares of Company A's stock for approximately $500,000.

28. Instead of investing Investor 3's funds in Company A, Crockett and Uboh misappropriated the investment.

**FIRST CLAIM FOR RELIEF**
**Violations of Section 17(a) of the Securities Act**

29. The Commission realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 28.

30. Defendant Uboh and Defendant Crockett, directly or indirectly, knowingly, recklessly, or negligently, in the offer or sale of securities, by use of the means or instruments of

transportation or communication in interstate commerce, or by use of the mails: (a) employed devices, schemes or artifices to defraud; (b) obtained money or property by means of untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in transactions, practices or courses of business which operated or would have operated as a fraud or deceit upon purchasers of securities.

31. The Defendants violated Section 17(a) of the Securities Act by, among other things, knowingly, recklessly or negligently making material misrepresentations to investors about the Issuers and Company A and misappropriating Investor 1's investment in Company A.

32. By reason of the foregoing, Defendant Uboh and Defendant Crockett directly or indirectly, violated Section 17(a)(1), (2), and (3) of the Securities Act [15 U.S.C. § 77q(a)(1), (2), and (3)].

## SECOND CLAIM FOR RELIEF
**Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**

33. The Commission re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 28.

34. Defendant Uboh and Defendant Crockett, directly or indirectly, knowing or recklessly, by use of the means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national securities exchange, (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of a material fact or omitted to state a material fact, necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon persons, in connection with the purchase or sale of securities.

35. By engaging in the conduct alleged above, Defendant Uboh and Defendant Crockett violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rules 10b-5(a), (b), and (c) thereunder [17 C.F.R. § 240.10b-5(a), (b) and (c)].

36. The Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder by, among other things, knowingly, recklessly or negligently making material misrepresentations to investors about the Issuers and Company A and misappropriating Investor 1's investment in Company A.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Commission respectfully requests that this Court enter a Final Judgment:

### I.

Finding that Uboh and Crockett violated Sections 17(a)(1), (2) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(1), (2) and (3)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rules 10b-5(a), (b) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a), (b) and (c)] as alleged in this Complaint;

### II.

Permanently enjoining Uboh and Crockett, their agents, servants, employees, attorneys-in-fact and assigns, and those persons in active concert or participation with them or who receive actual notice of the injunction by personal service or otherwise, from violating Sections 17(a)(1), (2) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(1), (2) and (3)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rules 10b-5(a), (b) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a), (b) and (c)] as alleged in this Complaint;

**III.**

Ordering Uboh and Crockett to disgorge any ill-gotten gains and to pay prejudgment interest pursuant to 15 U.S.C. § 78u(d)(5) and Sections 6501(a)(1) and (a)(3) of the National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, to be codified at 15 U.S.C. §§ 78u(d)(3) and 78u(d)(7);

**IV.**

Ordering Uboh and Crockett to pay civil monetary penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)]; and

**V.**

Permanently prohibiting Uboh and Crockett from participating in any offering of a penny stock, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock, under Exchange Act Section 21(d)(6) [15 U.S.C. § 78u(d)(6)]; and

## VI.

Granting such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

Dated: New York, NY
April 15, 2021

Respectfully submitted,

By: *Richard R. Best*
Richard R. Best
Lara Shalov Mehraban
Alexander Vasilescu
Sandeep Satwalekar
Rhonda L. Jung
*Attorneys for Plaintiff*
Securities and Exchange Commission
New York Regional Office
200 Vesey Street, Suite 400
New York, NY 10281-1022
Tel: (212) 336-0178 (Vasilescu)
VasilescuA@sec.gov