UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------X

SECURITIES AND EXCHANGE COMMISSION,

               Plaintiff,          **MEMORANDUM & ORDER**

  - against -            No. 21-cv-02049(KAM)(CLP)


UBONG UBOH (A/K/A NEDI SHUPO, FRANK
GOLDMAN, JONATHAN GOLDMAN, AND NINO),

              Defendant.

----------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

    In this civil action, commenced on April 15, 2021, the Securities and Exchange Commission ("SEC") alleges that defendants Ubong Uboh ("Mr. Uboh") and Tyler Crockett ("Mr. Crockett") participated in fraudulent schemes in violation of federal securities laws. (ECF No. 1, Compl.) The conduct alleged in the SEC's complaint also formed the basis for criminal charges against Mr. Uboh in a parallel proceeding before this Court: *United States v. Ubong Uboh*, 21-CR-00146 (KAM) (E.D.N.Y.). Presently before the Court is Mr. Uboh's *pro se* "Motion to Dismiss re: SEC's Final Judgment with Prejudice." (ECF No. 24, Def. Mem.)

    For the following reasons, Mr. Uboh's motion is respectfully DENIED.

**Background**

I.   **Factual Background**

The facts and procedural history necessary to determine the instant motion, based on the record, the complaint, and consent is set forth as follows:

The SEC's complaint alleged, among other things, that Mr. Uboh violated Sections 17(a)(1), (2), and (3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77q(a)(1), (2), and (3)]; Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)]; and Rules 10b-5(a), (b), and (c) thereunder [17 C.F.R. §§ 240.10b-5(a), (b), and (c)]. (ECF No. 1, Compl. ¶ 5.) The complaint alleged that Mr. Uboh and Mr. Crockett made fraudulent representations from a Miami call room soliciting investors—many of whom were senior citizens—to purchase shares of microcap issuers. (*Id.* ¶¶ 1,3.) The complaint further alleged that Mr. Uboh and Mr. Crockett misappropriated another investor's funds in connection with a private offering. (*Id.* ¶ 4.)

Mr. Uboh and Mr. Crockett persuaded investors to purchase shares of microcap issuers while Garrett O'Rourke, who managed the call room, dumped millions of dollars' worth of the microcap issuers' shares. (*Id.* ¶¶ 1, 13.) Mr. Uboh and Mr. Crockett materially misrepresented the microcap issuers' future prospects and their relationships with well-known financial institutions. (*Id.* ¶ 2.) The microcap issuers in fact had no relationships with

such financial institutions, and many had limited or no revenues or profits. (*Id.*)

Mr. Uboh and Mr. Crockett also falsely represented to potential investors an investment opportunity to purchase private shares of a purported technology company. (*Id.* ¶ 4.) After Mr. Uboh and Mr. Crockett falsely represented this company's industry partnerships and growth prospects, one individual invested $500,000 in the company's private placement; Mr. Uboh and Mr. Crockett then misappropriated these funds. (*Id.*)

## II.  Procedural Background

On April 15, 2021, the SEC filed its complaint against Mr. Uboh and Mr. Crockett alleging securities law violations. (ECF No. 1, Compl.) On the same day, an indictment against Mr. Uboh was unsealed for conduct arising out of substantially similar circumstances in *United States v. Ubong Uboh*, 21-CR-00146 (KAM) (E.D.N.Y.) (the "Criminal Action"). (*See* Criminal Action, ECF No. 1, Indictment; Criminal Action, ECF No. 3, Order to Unseal.) On September 20, 2021, the United States moved to intervene and to stay the civil proceeding, given the parallel criminal case. (ECF No. 19, Mot. to Intervene and Stay.) On September 22, 2021, the Court granted both motions.

On August 4, 2022, Mr. Uboh pleaded guilty to conspiracy to commit securities fraud and conspiracy to commit mail and wire fraud. (Criminal Action, ECF No. 35, Plea.) On January 27, 2023,

this Court entered a judgment sentencing Mr. Uboh to 60 months incarceration and ordering him to pay $3,741,263.96 in restitution; Mr. Uboh also consented to the entry of a forfeiture judgment of $446,702. (Criminal Action, ECF No. 53, Judgment.)

On December 20, 2022, Mr. Uboh consented to a settlement which incorporated a proposed judgment in the instant action. (ECF No. 22-1, Executed Consent at 6.) On January 6, 2023, the SEC sought this Court's approval of the proposed judgment and Mr. Uboh's executed consent. (ECF No. 22-1, Executed Consent; ECF No. 22-2, Proposed Judgment.) On February 22, 2023, the Court so-ordered the Judgment, which incorporated Mr. Uboh's consent and its terms. (ECF No. 23, together, the Consent Judgment.) The Consent Judgment (1) permanently restrained and enjoined Mr. Uboh from violating Section 17(a) of the Securities Act of 1933; Section 10(b) of the Securities Exchange Act of 1934; and Rule 10b-5 thereunder; (2) permanently barred Mr. Uboh from participating in offerings of penny stock; and (3) ordered that, upon the SEC's motion, the Court would determine the appropriateness of ordering disgorgement and/or civil penalties, and if so, the amounts. (*Id.* ¶¶ 1-4.) Should the Court order disgorgement, Mr. Uboh consented to pay prejudgment interest. (*Id.* ¶ 3.)[1]

---

[1] Mr. Crockett entered into a similar consent and judgment with the SEC. (ECF No. 15.)

On September 26, 2023, the SEC wrote Mr. Uboh for his consent to resolve the open issues of disgorgement and civil penalties. (ECF No. 25, SEC Ltr. at 1.) The SEC sent Mr. Uboh a "proposed Consent and Final Judgment" and asked if "he would consent to a Proposed Final Judgment that sought to finalize the financial remedies in this case (by deeming disgorgement satisfied by the monetary relief ordered in the Criminal Case and not seeking a civil penalty) and incorporate the prior injunction and penny stock bar imposed in the Consent Judgment." (ECF No. 26, SEC Mem. at 5; *see also* ECF No. 25, SEC Ltr. at 1.) Mr. Uboh did not respond to this communication, nor to the SEC's follow-up request on December 19, 2023. (ECF No. 25, SEC Ltr. at 1.) The SEC's December 19, 2023 follow-up notified Mr. Uboh that should the SEC not receive a response by February 1, 2024, it would request this Court to enter the "proposed Final Judgment" without his consent. (ECF No. 25, SEC Ltr. at 1.)

On January 25, 2024, Mr. Uboh, acting *pro se*, filed the instant "Motion to Dismiss re: SEC's Final Judgment with Prejudice" arguing that the SEC's "proposed Final Judgment and Consent Form" violates the constitutional prohibition against Double Jeopardy. (ECF No. 24, Def. Mot. ¶ 11.) The SEC filed its memorandum in opposition on March 13, 2024, arguing that Mr. Uboh lacked a basis for his motion and requesting the Court to set a schedule for the

SEC to move for financial remedies as contemplated in the Consent Judgment. (ECF No. 26, SEC Mem. at 2.)

## **Legal Standard**

### **I. Motion to Vacate**

Although Mr. Uboh styles his motion as a "Motion to Dismiss," the Court considers his motion as a Motion to Vacate the Judgment incorporating his Consent ordered on February 22, 2023, under Fed. R. Civ. P. 60(b). *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (noting that a court must "read [the *pro se* litigant's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest").

Under Rule 60(b), a court may grant relief from a final judgment in six circumstances. Regardless of which subsection a party invokes, Rule 60(b) requires courts to "strike[] a balance between serving the ends of justice and preserving the finality of judgments." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986) (collecting cases). To strike this balance, Rule 60(b) motions "should be broadly construed to do substantial justice, yet final judgments should not be lightly reopened." *Id.* (citation and quotation removed).

Rule 60(b) relief, however, "is generally not favored." *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001). Indeed, Rule 60(b) is "a mechanism for extraordinary judicial relief invoked only if the moving party demonstrates

6

exceptional circumstances." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quotations omitted); *see also Miles v. N.Y.C. Transit Auth.*, 802 F. App'x 658, 659 (2d Cir. 2020) (summary order). The decision whether to grant a Rule 60(b) motion falls to "the sound discretion of the district court[.]" *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012) (quotations omitted).

Although a *pro se* party's 60(b) motion should be construed liberally, see *Burgos*, 14 F.3d at 790, the litigant is "not relieved of his or her obligation to demonstrate extraordinary circumstances." *Sec. & Exch. Comm'n v. Cohen*, 671 F. Supp. 3d 319, 322 (E.D.N.Y. 2023) (internal citation omitted). A *pro se* litigant must still ultimately abide by the "substantive requirements of motion practice." *Spurgeon v. Lee,* No. 11-CV-600 (KAM), 2019 WL 569115, at *2 (E.D.N.Y. Feb. 11, 2019) (cleaned up). The burden of proof "is on the party seeking relief from judgment." *Int'l Bhd. of Teamsters*, 247 F.3d at 391.

## Discussion

The crux of Mr. Uboh's argument is that the constitutional prohibition against Double Jeopardy invalidates any sanction which the SEC has sought or will seek, and to which he consented in the Consent Judgment entered by this Court on February 22, 2023. (*See generally* ECF No. 24, Def. Mot.; ECF No. 23, Consent Judgment.) Because Mr. Uboh has "already been convicted of the violated federal laws and has thus began serving his imposed sentence which

included 60 mos. of imprisonment as well as a judgment for restitution and forfeiture in the amount of $446,309.68,"[2] he argues that the SEC may not further punish him through the "proposed sanctions." (ECF No. 24, Def. Mot. ¶¶ 8, 11.) Mr. Uboh's motion also objects to the permanence of his consent to a penny stock bar as improper. (ECF No. 22-1, Executed Consent, ¶ 3.)

As explained below, both arguments fail to "demonstrate[] exceptional circumstances" necessary to warrant vacating the Consent Judgment. *Ruotolo*, 514 F.3d at 191. Accordingly, Mr. Uboh's motion does not warrant relief under Rule 60(b) and is respectfully denied.[3]

## I. Double Jeopardy

To the extent Mr. Uboh argues that any SEC sanction violates the prohibition on Double Jeopardy, Mr. Uboh's argument fails. First, Mr. Uboh waived any Double Jeopardy claims in the Executed Consent. (ECF No. 22-1, Executed Consent, at 3, ¶ 11.) Second,

---

[2] Mr. Uboh incorrectly cites the forfeiture amount, which is $446,702. (Criminal Action, ECF No. 53, Judgment at 5.)

[3] The Court would similarly deny Mr. Uboh's motion were the Court to treat it as a Motion to Dismiss under F.R.C.P. 12(b). Mr. Uboh has waived the relevant defenses under F.R.C.P. 12(b) in the Consent Judgment. (*See* ECF No. 23, Consent Judgment at 1; ECF No. 22-1, Executed Consent.) Specifically, Mr. Uboh admitted the Court's jurisdiction over him and over the subject matter of this action (ECF No. 22-1, Executed Consent ¶ 1); Mr. Uboh waived service of the Judgment (*Id.* ¶ 10); and Mr. Uboh "agree[d] to comply with the terms of 17 C.F.R. § 202.5(e)," which provide in part that "it is the Commission's policy 'not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings.'" (*Id.* ¶ 12.)

even absent Mr. Uboh's explicit waiver, case law fails to support Mr. Uboh's argument.

A. Waiver

"A defendant in a civil enforcement action is not obliged to enter into a consent decree; consent decrees are 'normally compromises in which the parties give up something they might have won in litigation and waive their rights to litigation.'" *Sec. & Exch. Comm'n v. Romeril*, 15 F.4th 166, 172 (2d Cir. 2021) (quoting *SEC v. Citigroup Glob. Mkts., Inc.*, 752 F.3d 285, 295 (2d Cir. 2014)). In *Romeril*, the Second Circuit affirmed the district court's rejection of the defendant's claim of legal error voiding his SEC consent decree under Rule 60(b)(4), in part because it found the district court did not err in accepting a decree to which the defendant consented.

On December 20, 2022, Mr. Uboh consented to the SEC's proposed judgment that permanently restrained and enjoined him from violating certain sections of securities laws; barred him from participating in any offering of penny stock; and ordered him to pay disgorgement and civil penalties determined by the Court upon the SEC's motion. (ECF No. 22-1, Executed Consent at 6; ECF No. 23, Consent Judgment ¶¶ 1-4.) This Court entered the Consent Judgment and its terms. (ECF No. 23, Consent Judgment.)

In consenting, Mr. Uboh waived certain rights, including explicitly "waiv[ing] any claim of Double Jeopardy based upon the

settlement of this proceeding, including the imposition of any remedy or civil penalty herein." (ECF No. 22-1, Executed Consent ¶ 11.) Mr. Uboh does not argue that he consented involuntarily, see *Romeril*, 15 F.4th at 172, nor does he offer any other reason why his consent would be invalid, see *Int'l Bhd. of Teamsters*, 247 F.3d at 391. Indeed, Mr. Uboh's consent explicitly acknowledged that he knowingly and voluntarily agreed to the terms of the Consent and the Judgment incorporating the Consent. (ECF No. 22-1, at 3, ¶ 7.) Mr. Uboh's claim of Double Jeopardy is thus without merit because he explicitly consented to waive such claims.

B. Double Jeopardy Case Law

Even assuming Mr. Uboh has not waived Double Jeopardy claims, prevailing case law does not support his argument. "In protecting an already-punished person against further punishments, the Double Jeopardy Clause does not prohibit the imposition of all additional sanctions 'that could, in common parlance, be described as punishment'....[R]ather it 'protects only against the imposition of multiple *criminal* punishments for the same offense' in successive proceedings[.]" *S.E.C. v. Palmisano*, 135 F.3d 860, 864 (2d Cir. 1998) (denying double jeopardy challenge and quoting *Hudson v. United States*, 522 U.S. 93, 99 (1997)) (emphasis in original) (internal citation removed).

"Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory interpretation." *Id.* at

864. The Supreme Court in *Hudson v. United States* noted "guidelines to assist courts in determining if a purported civil penalty functions as a criminal penalty." *S.E.C. v. Credit Bancorp, Ltd.*, 738 F. Supp. 2d 376, 389 (S.D.N.Y. 2010). In particular, courts consider: "(1) '[w]hether the sanction involves an affirmative disability or restraint'; (2) 'whether it has historically been regarded as a punishment'; (3) 'whether it comes into play only on a finding of *scienter*'; (4) 'whether its operation will promote the traditional aims of punishment-retribution and deterrence'; (5) 'whether the behavior to which it applies is already a crime'; (6) 'whether an alternative purpose to which it may rationally be connected is assignable for it'; and (7) 'whether it appears excessive in relation to the alternative purpose assigned.'" *Hudson*, 522 U.S. at 99–100 (quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–169 (1963)).

Here, although the SEC has not yet moved for any additional penalty, including disgorgement, it seeks an order for a motion schedule. "A line of cases" in this Circuit and in others "have applied these guidelines and found that disgorgement, Commission penalties, and injunctions are civil penalties, and thus do not violate the Double Jeopardy Clause." *Credit Bancorp, Ltd.*, 738 F. Supp. 2d at 389. This has held true for disgorgement following the Supreme Court's recent decision in *Kokesh v. Securities and Exchange Commission* holding that "[d]isgorgement, as it is applied

11

in SEC enforcement proceedings, operates as a penalty under" 28 U.S.C. § 2462, which provides a five-year statute of limitations for "any 'action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise.'" 581 U.S. 455, 457, 467 (2017); *see, e.g.*, *United States v. Jumper*, 74 F.4th 107, 112 (3d Cir.), *cert. denied*, 144 S. Ct. 406 (2023) (collecting cases) (explicitly considering *Kokesh* but holding that "[e]ight circuits have preceded us in holding that disgorgement is not a criminal punishment and thus does not implicate the Double Jeopardy Clause"); *United States v. Bank*, 965 F.3d 287, 291 (4th Cir. 2020) (explicitly considering *Kokesh* and still "join[ing] with every other circuit to have decided the issue in holding that disgorgement in an SEC proceeding is not a criminal penalty pursuant to the Double Jeopardy Clause"); *United States v. Dyer*, 908 F.3d 995, 1003 (6th Cir. 2018) (explicitly considering *Kokesh* but adopting the "Second Circuit's analysis of the *Hudson* factors and conclusion that disgorgement is not a criminal penalty"); *see also Sec. & Exch. Comm'n v. Sharp*, 626 F. Supp. 3d 345, 380 (D. Mass. 2022) (noting that "several sister circuits agree that disgorgement has not 'historically been viewed as punishment,'" quoting *Palmisano* and citing *Bank* and *Dyer*).

In *S.E.C. v. Palmisano*, the *pro se* defendant argued that the judgment ordering him to pay disgorgement and civil penalties violated the Double Jeopardy Clause by punishing him for the same

conduct from a parallel criminal proceeding. *See* 135 F.3d at 862. The Second Circuit, applying *Hudson*, denied the Double Jeopardy claim and affirmed the judgment, with the only modification being that "to the extent that [the defendant] makes payment of restitution as ordered in the judgment entered in the criminal case, those payments shall offset his disgorgement obligation in the present case[.]" *Id.* at 866–67.

District courts in this Circuit have similarly entered judgments with the same remedies at issue here in SEC actions that related to criminal actions; here, the civil and criminal actions were brought or unsealed the same day. *See, e.g., S.E.C. v. Baldassare*, No. 11-CV-5970 ARR VVP, 2014 WL 2465622, at *1 (E.D.N.Y. May 29, 2014) (adopting a report and recommendation granting the SEC's motion for a default judgment that "enjoined [the defendant] from committing further violations of the federal securities laws and from engaging in future offerings of penny stock" and finding the defendant liable for disgorgement and prejudgment interest, "deemed fully satisfied by the forfeiture order entered against [defendant] and his co-defendants in the parallel criminal proceeding"); *Sec. & Exch. Comm'n v. Curshen*, No. 08 CIV. 7893 (PGG), 2014 WL 12791876, at *9–12 (S.D.N.Y. Mar. 21, 2014) (granting the SEC's motion for summary judgment under collateral estoppel based on the defendant's criminal conviction and ordering the SEC to submit a proposed judgment that included,

*inter alia*, a penny stock bar, disgorgement, and prejudgment interest); *Credit Bancorp, Ltd.*, 738 F. Supp. 2d at 379 (granting the SEC's motion for summary judgment for securities law violations where the defendant had already been sentenced to imprisonment and restitution in a parallel criminal case, where the motion included a "permanent injunction against future violations of these statutes; disgorgement; and a civil monetary penalty").

For Mr. Uboh's Consent Judgment to violate Double Jeopardy, its penalties must be criminal. *See Palmisano*, 135 F.3d at 864. To the extent Mr. Uboh contends the injunctions against violating relevant securities laws and participating in penny stock offerings violate Double Jeopardy, his arguments fail. These penalties are civil. *See Credit Bancorp, Ltd.*, 738 F. Supp. 2d at 389 (noting that, among others, "injunctions are civil penalties, and thus do not violate the Double Jeopardy Clause"); *see also U.S. v. Tommassello*, 178 F. App'x 139, **1 (3d Cir. 2006) (per curiam) (citing *Palmisano*, noting that "[t]he permanent injunction…in the SEC action is not a criminal punishment and did not trigger the protections of the Double Jeopardy Clause"). District courts in this Circuit have imposed injunctions and penny stock bars following the resolution of criminal proceedings for the same underlying conduct. *See, e.g.*, *Baldassare*, No. 11-CV-5970

ARR VVP, 2014 WL 2465622, at *1; *Curshen*, No. 08 CIV. 7893 (PGG), 2014 WL 12791876, at *9-12.

The Consent Judgment also provides that Mr. Uboh may be ordered to pay disgorgement and civil penalties determined by the Court upon the SEC's motion. (ECF No. 23, Consent Judgment ¶ 3.) In *Liu v. Securities and Exchange Commission*, the Supreme Court recently upheld the SEC's authority to obtain disgorgement awards from wrongdoers under 15 U.S.C. § 78u(d)(5), part of the Exchange Act, so long as "'a disgorgement award [] does not exceed a wrongdoer's net profits and is awarded for victims,'" and where net profits consider a court's deduction of legitimate expenses before ordering disgorgement. *Sec. & Exch. Comm'n v. Penn*, No. 14-CV-581 (VEC), 2021 WL 1226978, at *10 (S.D.N.Y. Mar. 31, 2021), *aff'd sub nom. United States Sec. & Exch. Comm'n v. Penn*, No. 21-1348-CV, 2022 WL 2517218 (2d Cir. July 7, 2022) (quoting *Liu v. Sec. & Exch. Comm'n*, 591 U.S. 71, 74, 91-92 (2020)).

As noted, the SEC has not yet moved before this Court to resolve the open issues of financial remedies, though it has requested a schedule to move to do so. (*See* ECF No. 26, SEC Mem. at 2.) Although the SEC responded to Mr. Uboh's motion that it would deem his payment obligations for "disgorgement and prejudgment interest…satisfied by the restitution and Final Order of Forfeiture ordered in the Criminal Case," ECF No. 26, SEC Mem. at 3, and that it does "not seek[]" civil penalties, *id.* at 5, the

Court cannot prematurely review and determine what the SEC only anticipates it will seek by motion. *See Baldassare*, No. 11-CV-5970 ARR VVP, 2014 WL 2465622, at *12 (granting the SEC's motion for default judgment but recommending that only "upon the SEC's submission of a proper evidentiary basis for its allegations concerning the defendant's profits" would the defendant be disgorged of ill-gotten profits plus prejudgment interest).

However, were the SEC to move for this Court to order disgorgement and prejudgment interest in the manner indicated, Mr. Uboh's Double Jeopardy arguments would fail. First, Mr. Uboh agreed that "in connection with the Commission's motion for disgorgement and/or civil penalties, and at any hearing held on such a motion…Defendant may not challenge the validity of this Consent or the Judgment[.]" (ECF No. 22-1, Executed Consent ¶ 4.) Second, as established above, the imposition of disgorgement and prejudgment interest would not violate Double Jeopardy. *See Palmisano*, 135 F.3d at 865; *see also Jumper*, 74 F.4th at 112; *Bank*, 965 F.3d at 291; *Dyer*, 908 F.3d at 1003. Further, the SEC's indication that it would deem Mr. Uboh's payment obligations for "disgorgement and prejudgment interest…satisfied by the restitution and Final Order of Forfeiture ordered in the Criminal Case," ECF No. 26, SEC Mem. at 3, would likely be consistent with *Liu*. *See Liu,* 591 U.S. at 92 ("It is true that when the 'entire profit of a business or undertaking' results from the wrongdoing, a defendant may be denied

16

'inequitable deductions[.]'"); *Penn*, No. 14-CV-581 (VEC), 2021 WL 1226978, at *10 (finding that where there was no evidence that the fraudulent scheme at issue "provided any legitimate services," the full amount misappropriated "constitute[d] ill-gotten gains" appropriate for disgorgement).

Finally, Mr. Uboh's reliance on *United States v. Halper*, 490 U.S. 435 (1989) and *United States v. Park*, 947 F. 2d 130 (5th Cir. 1991) is misplaced. The *Halper* Court viewed "the imposition of 'punishment' of any kind" as subject to double jeopardy, and "whether a sanction constituted 'punishment' depended primarily on whether it served the traditional 'goals of punishment,' namely, 'retribution and deterrence'"; thereafter, the *Hudson* Court, in turn, specifically "disavow[ed]" *Halper*'s method of analysis as "unworkable" and "ill considered" for "deviat[ing] from our traditional double jeopardy doctrine[.]" *Hudson*, 522 U.S. at 96, 101-102 (discussing the *Halper* analysis). Mr. Uboh's argument mirrors that "unworkable" approach: he argues that "the proposed sanctions (though civil) are reflective of detrrence [sic] and retribution involving the same offense(s)," and therefore "are to be viewed and considered as qualifying as double jeopardy." (ECF No. 24, Def. Mem. ¶ 11.) Mr. Uboh's argument contradicts the Supreme Court's holding in *Hudson*. *See* 522 U.S. at 102 ("We have since recognized that all civil penalties have some deterrent effect….If a sanction must be 'solely' remedial (*i.e.,* entirely

nondeterrent) to avoid implicating the Double Jeopardy Clause, then no civil penalties are beyond the scope of the Clause."). In turn, *Park*—in which the defendant raised a Double Jeopardy argument to challenge a subsequent criminal conviction—is also inapposite: first, Park relied on *Halper* for his Double Jeopardy argument, which *Hudson* abrogated; second, the Fifth Circuit ultimately found that Double Jeopardy did not even attach.

## II. Scope of Mr. Uboh's Penny Stock Bar

To the extent Mr. Uboh argues that the scope of the penny stock bar is improper, this argument is also without merit. Mr. Uboh fails to show any extraordinary circumstances—or frankly any circumstances at all—that warrant vacating the Consent Judgment because it permanently bars Mr. Uboh from participating in penny stock offerings.

The standard for imposing a penny stock bar "essentially mirrors that for imposing an officer-or-director bar." *U.S. S.E.C. v. Universal Exp., Inc.*, 475 F. Supp. 2d 412, 429 (S.D.N.Y. 2007), *aff'd sub nom. U.S. S.E.C. v. Altomare*, 300 F. App'x 70 (2d Cir. 2008). That standard requires courts to assess "(1) the egregiousness of the underlying securities law violation; (2) the defendant's repeat offender status; (3) the defendant's role or position when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur." *Sec. & Exch.*

*Comm'n v. Cattlin*, No. 21-CV-5294-ARR-JRC, 2024 WL 1259101, at *11–12 (E.D.N.Y. Mar. 8, 2024), *report and recommendation adopted,* No. 21CV5294ARRJRC, 2024 WL 1259387 (E.D.N.Y. Mar. 25, 2024) (quoting *S.E.C. v. Patel*, 61 F.3d 137, 141 (2d Cir. 1995) (internal quotations omitted)) (applying the standard to assess a bar on participating in penny stock offerings).

Each factor is satisfied here. As set forth in the SEC's memorandum of law in opposition to Mr. Uboh's motion, Mr. Uboh was convicted of conspiracy to commit securities fraud, wire fraud, and mail fraud in the sale of penny stocks, in a related criminal case, *United States v. Ubong Uboh*, 21-CR-00146.[4] (ECF No. 26, SEC Mem. at 1.) Further, Mr. Uboh has repeatedly violated the law with fraudulent schemes: Mr. Uboh had previously pleaded guilty to wire fraud and conspiracy to commit wire fraud in connection with a timeshare scheme; in September 2013, he was sentenced to three years of imprisonment and three years of supervised release, "during which time he engaged in all of the conduct" in the complaint. (ECF No. 1, Compl. ¶ 11.) In the instant case, over a

---

[4] For its analysis, the Court relies on the allegations in the SEC's complaint. In the Consent Judgment, Mr. Uboh consented that he "underst[oo]d and agree[d] to comply with the terms of 17 C.F.R. § 202.5(e), which provide in part that it is the Commission's policy 'not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings.'" (ECF No. 22-1, Executed Consent ¶ 12.) As part of Mr. Uboh's agreement to comply with § 202.5(e), he "acknowledge[d] the guilty plea for related conduct" and, among other things, consented that "upon the filing of this Consent, Defendant hereby withdraws any papers filed in this action to the extent that they deny any allegation in the complaint[.]" (*Id.*)

two-year period, Mr. Uboh himself worked in the call room and specifically solicited retail investors making numerous fraudulent representations with the requisite scienter, according to the SEC. (*Id.* ¶¶ 18, 21.) The SEC alleges Mr. Uboh received $341,898 from bank accounts that the call room manager controlled. (*Id.* ¶ 22.) Finally, there is a likelihood that the conduct will recur, as Mr. Uboh explicitly states that his "sole means of employment upon release" is trading stock. (ECF No. 24, Def. Mem. ¶ 5.)

Mr. Uboh fails to offer any valid reason—let alone demonstrate exceptional circumstances—that the Consent Judgment to which he agreed permanently barring him from participating in penny stock offerings is improper under this standard. Mr. Uboh mainly takes issue that the "judgment is requesting that Defendant consent to being permanently prohibited from engaging and/or participating in any means of 'trading' for the purposes of the stock market and/or exchange market(s)," but that this is Mr. Uboh's sole means of employment upon release, and that "[i]n other much higher profile cases of this type and involving much larger amounts of money; those defendants were only temporarily barred from participating in the acts of 'trading,' if they were sanctioned at all in that manner." (ECF No. 24, Def. Mem. ¶ 5.) The implication that "being permanently prohibited from engaging and/or participating in any means of 'trading'" will inappropriately limit his means of employment is neither compelling nor an exceptional circumstance

warranting relief. Indeed, the prohibition bars him from participation in *penny* stock offerings. (*Id.* (emphasis added).) Further, the Court agrees with the SEC that the "penny stock bar and an injunction are needed particularly because Uboh plans to again seek to work in the securities industry when he is released from prison." (ECF No. 26, SEC Mem. at 2.)

## Conclusion

Accordingly, the Court DENIES Mr. Uboh's motion. The Court shall schedule a telephone status conference with the parties to discuss the briefing schedule for the SEC's motion for outstanding financial remedies. The SEC shall serve Mr. Uboh with a copy of this Memorandum and Order at his current prison address and note service on the docket by June 5, 2024. The Clerk of Court is respectfully requested to amend the caption to reflect Mr. Uboh's known aliases: "Nedi Shupo," "Frank Goldman," "Jonathan Goldman," and "Nino."

**SO ORDERED.**

Dated:     June 4, 2024
           Brooklyn, New York

_____
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York